v. Pasqua, case number 242912. Good morning. May it please the Court, my name is Elizabeth Johnson, and I'm representing Frank Pasqua in this appeal. Mr. Pasqua's sentence must be vacated and remanded because it was both procedurally and substantively unreasonable. It's procedurally unreasonable because the district court completely failed to offer any statement of reasons whatsoever to explain or support the sentence imposed. The Court also failed to put on the record at sentencing any guidelines calculation as part of the sentencing procedures, and the sentence is substantively unreasonable because it's unduly harsh. So the district court did a FARET hearing and then an evidentiary hearing as to whether he committed the violations, and then said there was – would be a recess before sentencing, but he wanted to proceed directly to sentencing. So those three things happened in sequence over two days, right? Correct. And it's – but at the FARET hearing, he goes through each alleged violation, describes what it is, and says what the guideline sentence would be, right? Correct. For each of them. And then at the evidentiary hearing, he explains his factual findings as to what he's determined Mr. Pasqua did and finds that he committed each of those violations, right? Correct. And then at the sentencing hearing, he goes through each of the violations and he says, I'm going to give you a sentence of a certain amount of months for each of the violations, and in each of those cases, it's either below the guidelines range that he articulated at the FARET hearing or it's at the bottom of it, right? I believe so. I think in some cases it may be in the middle, but essentially, yes. Okay. So if – if we were to put those three things together, you wouldn't say that he failed to calculate the guidelines or that he didn't give reasons. You're just sort of saying he should have repeated what he had said at the immediately proceeding hearings at the – what was formally the sentencing hearing. That's not – no, that's not what I'm arguing, Your Honor. I would say two things. Number one is, on the guidelines calculation, the cases don't talk about doing a guidelines calculation at some point in the proceedings. If this were true, anyone who pleads guilty doesn't need to get the sentencing calculation done at sentencing because it's in the plea agreement. This judge nowhere during the sentencing says, these are the guidelines levels and – and as he's required to do by the cases.  It was the previous day, and like this is just an ongoing interaction. The previous day, he gives the guidelines sentence. So if at the beginning of the sentencing hearing, if he says, I explained to you the guidelines calculations for each of the violations yesterday at the FARET hearing, I incorporate those calculations by reference, and now I'm proceeding to sentencing, would that have been okay? I think it might well have been, but nothing like that happens. Okay. So if he could have just said that, wouldn't that be the understanding of all of the parties if it's just one ongoing interaction between the defendant and the court? There certainly are cases, Your Honor, where when the – when what the court does is incorporate the probation reports calculation on the record, that that is considered adequate. But again, that didn't happen here, and it certainly didn't happen as part of the sentencing. Ms. Johnson, I have a different question. Yes, Your Honor. You don't cite, nor does the government cite, guideline section 7C1.1b, which says when there are multiple violations of supervised release, you sentence based on the most serious violation. And this language actually has been interpreted to preclude consecutive sentences in violations. Are you not – There are also pieces that have authorized it. I haven't asked my question. I'm sorry, Your Honor. Did the parties miss this? It seems to me, looking at this, I mean, the district court could do what it wanted to do, but it had to, in the first instance, at least consider the guidelines. Yes, Your Honor. I agree with you. I think that you're right that I did miss it, and I apologize. But I think that this goes to part of the argument that is made here, which is that the sentencing determination is unfettered from the guidelines and, frankly, from anything at all. I mean, there's nothing in this record where the court ever says, the reason I picked this sentence is this sentencing factor. Never. And there's a whole line of cases in this Court that say very clearly that that is plain error and that requires reversal. Unless we can tell from the record why he picked a sentence, right? We say that all the time. Yes. But when you're talking about being able to tell. And can we also say that when the sentence is within the guideline range, you don't need a lengthy explanation, right? But, Your Honor, it reduces the requirements, right? Obviously, if you're saying, I have looked at the guidelines, the guidelines are this, I feel that in this case that is an appropriate sentence, that would be one thing. But nothing like that happens in this case. This judge simply says, the sentence is two months, or, you know, X months on this violation, X months on this violation. They all add up to 67 months at the end. But, Your Honor, he just, John, painstakingly through each of the violations explained what the conduct was and said what the applicable guidelines range is. But he hasn't explained to the benefit of the defendant that for each of them he picks a below-guidelines sentence? That's not the test. The test is, from this record, can. Part of the test is whether it affects substantial rights or the reputation of judicial proceedings or whatever. So if, in fact, to the extent that you think it was unmoored from the guidelines, if it were to the defendant's benefit because he picked a range below the, what he could have done in the guidelines, it doesn't seem like it affected his substantial rights or the reputation of judicial proceedings. Well, the substantial rights that this circuit has talked about when they are looking at the failure to provide a statement of reasons is not would the sentence be different? Was the sentence good? Was the sentence bad? The substantial rights are tied, and this has been true since Lewis, to the ability to obtain appellate review. And if there's, and if the court, this Court can't tell from the record what the reasons were from the sentence, and Mr. Pascourt can't tell. So then if I were to say to you, since I'm the one doing the appellate review, that if I look at this record and I understand the whole record to be that he articulated the guidelines calculations at the Feretta hearing, and it doesn't seem to be an incorrect calculation, and he describes the conduct at the Feretta hearing and the evidentiary hearing, and then gets arguments from the parties on the sentence at the sentencing hearing, that is enough for me to provide meaningful appellate review. So what am I missing? Describing the conduct doesn't explain how it leads to the sentence. Every single person who's sentenced did something bad, and they, and the judge can explain what the conduct is, but they have to offer sentence. I think for the reasons Judge Monasti is suggesting, the argument that we can't tell what the judge was thinking is a loser, frankly. What, what, but I am troubled by 7C1.1B. I'm going to ask the government. It seems to me on its face, it's clear that the sentencing judge was at least in the first instance supposed to think about this guideline and sentence based on the most serious violation and not to sentence consecutively. Now, you didn't raise that argument. Is it, is it waived? Is it plain error? What, what, what do we do with it? I would say, Your Honor, that it is possibly, that it is probably plain error. And I would refer the Court to Pew 945 F3rd 9, which is in a similar, which is in the post, it's a post-conviction sentencing. But what happens there is one of the reasons that the circuit vacates and remands is that the judge imposes concurrent sentences without explaining why. And the Court says that the general presumption under the guidelines in that situation is that you need to first look at the guidelines on the most serious case and determine if that's a most serious count, and determine if that sentence is adequate. And if it's adequate, then you're done. You don't add more to that. None of that was done here. Absolutely not, Your Honor. If you, and, and what Pew is saying is that in that case, you can't just add on the consecutive sentence without explaining why that first long sentence isn't enough. And I would point out that that first long sentence, the guideline sentence on the most severe violation, is exactly what was recommended by probation in this case, and the Court didn't, never, never addresses that either. And what Pew also talks about is that when you're going into sentencing, the facts that you need to consider are sentencing factors, not guilt factors. There isn't a question here that Mr. Pasqua committed these violations. He's not challenging those. What he's challenging is whether the Court explained its sentence. And frankly, I can't tell why the Court did what it did. I could, if it had said the top guideline is 47 months and, 57 months, and that's what I'm going to sentence him to because I think that that adequately, that that addresses his conduct, that would be one thing. But the Court goes over probation's recommendation, over the government's request, adds the extra 10 months, and we can't tell why. Is it, I think we're all assuming it's the severity of the conduct. But, thank you, Your Honor. Roberts. Good morning, Your Honors. May it please the Court. My name is Ben Klein. I'm an assistant United States attorney. I represent the government in this appeal. I was also counsel for the government below. So, Mr. Klein, I might be missing something, but I think under 7C1.1B and the cases that interpreted, a district court is supposed to sentence on the most serious violation and the language, according to several Second Circuit cases, precludes consecutive sentences. Now, the district court can, for policy reasons, disagree and go its own way. But in the first instance, it has to think about it and consider the guideline and then make a decision. So, I gather this did not happen here. Neither side reminded the Court of 7C1.1B. But in these circumstances, why should we not vacate and remand for the district court to consider 7C1.1B? Your Honor, I think as an initial matter, as the Court noted, this argument was not raised by the parties. And as a result, I believe that under this Court's precedence, it should be deemed waived. Why should it not be plain error? It's right there in the guideline. There are multiple cases that have applied it. Addressing that more directly, Your Honor, I don't know that there's any evidence that the district court was violating Second Circuit law in addressing the sentence the way that it did. I wouldn't put it that way. The district court wasn't following Second Circuit law. And in part, because neither the government nor defense counsel pointed out to the district court that there is this guideline and that there is this case law. Your Honor, I think what the district court was doing in imposing the sentence that it did was it was providing mathematical apportionment to show how it was thinking about the various violations. I understand that. I understand that. But it should have, in the first instance, considered the guideline. Do you not agree with that? I believe it did, Your Honor. You believe it did? I believe it did consider the guidelines. Did it consider 7C1.1b? Your Honor, the — Did it consider the concept that you're supposed to sentence on the most serious violation? I don't know that there's any evidence in the record one way or the other on that. The district court is, under this Court's cases, we cite numerous cases for this proposition. It's presumed to consider the guidelines and to apply them appropriately. Well, I mean, the district court says at the threat hearing, I think directly, this can be consecutive or concurrent, right? That's exactly correct. And so Judge Chin is suggesting that 7C1.1b requires it, that means that it cannot be consecutive. Is that right? Was it an error to apply the sentence consecutively as opposed to concurrently? Or is the district court right that he has discretion to do it either way? Your Honor, my understanding of the case law is that the district court does have discretion to depart from the policy statements in that — Well, so that 7C1.1b says where there's more than one violation of the conditions of supervised release or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade. So does that mean that you have to treat it as if there's only one violation? I don't think — So what do you think is the — if we were following that guideline, like, let's say there's not a variance in the guideline, what does it require? United States versus Kingdom, we — I agree, the wording of the guideline on its face is a little bit unclear, but the case law makes clear United States versus Kingdom, 1998, this is longstanding law. Have you read — are you familiar with United States versus Kingdom? I'm not, Your Honor. Okay. That case says you do not sentence — a correct interpretation of the guideline is that you do not impose consecutive sentences. It goes on to say, yes, a district court can disregard that, but the district court at least has to think about it and say, I am going to deviate from the guideline because we don't have any of that here, do we? That's correct, Your Honor. I think, though, what you do have in this case is a view into how the court was thinking about its sentence. And what it was doing in imposing — I think you ought to go back and take a look at the case law on 7C1.1B and see whether a vacating — a remand is warranted. Again, the district court can come out the same way, but he has to go through the process of thinking about, you know, should I sentence based on the most serious one? If not, why not? As I understand — well, go ahead. I don't know if that was a question. No, that wasn't a question. It was a suggestion. But as I understand it, the government's position and view of this colloquy is, first, this issue is not raised. Second, even with respect to 7C1.1B, that is a policy statement that is not binding. And so what I might urge you to do, and I see Mr. Maimon here, is to provide on each side a letter within a week. Is that enough time? If you can do it by Friday, that would be perfect. If you can't, let us know. Friday, close of business, and then we'll take that under advisement once those letters are submitted simultaneously. Does that work for you, Ms. Johnson? Yes, Your Honor. Thank you. Does that work for the government? Of course, Your Honor. Now, you can proceed with anything else you want to talk about. I would just spend one moment addressing what it is that the defendant is asking this Court to do on plain error review in the context of an argument that was not even raised. This is obviously plain error. There's a 300-plus page record that is in front of this Court. There's a careful mathematical apportionment of the sentence by the district court. In the face of that record, what the defendant is asking you to do is to make an argument based on basically what I suggested to Ms. Johnson, which is that if you understand all of the three hearings together as one communication, he is calculating the guidelines of describing the conduct and then picking a sentence within the range, right? That's exactly right. Ms. Johnson is right that he doesn't explain why he picked one particular number for each violation, right? That is true, Your Honor. So is that a problem? I don't think it is, Your Honor. Consistent with the massive breach of trust in this case, you see that almost half of the sentence, 30 of the 67 total months, was driven by the two witness tampering specifications. You also imposed a 12-month sentence for Specification 6, which again makes sense because it involves a prolonged period of time stocking specification. And then you impose sentences of three to seven months on each of the other violations, which all involve one-off conduct. I'll also note this is the unusual case where you have in the record admissions from the defendant, who is representing himself. And during the sentencing proceeding, what you have is the defendant admitting that his conduct was absolutely wrong in the Appendix of 343, his behavior was terrible, and that he treated his wife, quote, in a way that no one deserves. That's in the Appendix of 345. All of that was before the district court. I'll note the — But what does that tell us? I mean, what — I think it puts this case into footing that's similar to what this Court has affirmed, Judge Bonacci, in the Ortiz case that you wrote, where the Court affirmed a statutory maximum sentence, which is above guidelines of 60 months, where the Court gave limited explanation of its sentence, but its rationale was evident from the record. On plain error, it's plainly evident. On plain error, exactly. That's exactly correct, Your Honor. Just as this case is. And in Ortiz, the court — the district court has conducted a two-day evidentiary hearing, just as it had here. In the Schwartz case, this Court affirmed a sentence where the district court simply said it couldn't overlook the defendant's refusal to turn over his cell phone when first asked, that he had a history of failing to comply with the terms of his supervised release. In the Ivory case, this Court affirmed a statutory maximum sentence. So in — in Ortiz, the — the conduct was, you know, horrifying. And so it made — it — you could tell from the record why the district court would impose a — a strong sentence. Here, the district court actually picks below-guidelines sentences for each of them. I mean, it does work to the benefit of the defendant, but in a way, it also means it's a little hard to tell exactly why he picked that amount for each one of the violations, right? Each of the violations in this case, Your Honor, involved disparate conduct, unlike many violations of supervised release where you have multiple specifications relating to a single incident. And so what I think that you see in the way that the district court apportioned its sentence is how the district court thought about each of the violations. And so I do think that it gives you some insight into how the court was — was viewing the matter. I see that my time has nearly expired. Let — let me just — as you prepare your letters, let me just give you a couple sites of cases to look at. United States v. Kingdom is 157 F. 3rd, 133. Now, Kingdom is a probation case, violation of probation, but the language is exactly the same. And there are supervised release cases that — that — that say this — this is a summary order, but recently United States v. Ruiz, R-U-I-Z. It's a Westlaw summary order, 2023. It says whereas here there are multiple violations, the relevant grade for sentencing is the one covering the most serious offense. There's also United States v. McNeil, 415 F. 3rd, 273. So take a look. I think it's pretty clear the district judge was required to consider it. I mean, you do have a plain error argument and a waiver argument, I suppose, but thank you. Yeah. It would be helpful to cover the abandonment slash waiver issues and also issues relating to whether or not, now that the guidelines are not mandatory, what that means with respect to a district court sentencing decisions when an objection is not made. I understand, Your Honor. Thank you so much. Thank you very much. Unless there are further questions, we'll rest on our submissions. Thank you. Thank you, Your Honor. I just want to pull apart a couple of different issues that are being, I think, smushed together in the government's argument. One of them is did the district court provide an adequate statement of reasons? Second, did the district court consider the factors it's supposed to consider? And three is did it have support in the record for the considerations that it made? These are all different. And the Court and this Court and the Supreme Court have made very clear that the statement of reasons is its own independent mandatory requirement. And that is the focus of your appeal. That is, I think, yes. That is the focus of the appeal. I don't think saying this violation is worth two months and that violation is worth three months tells you what the sentencing considerations are. And even if the one- And that, from your perspective, Ms. Johnson, as I understand it, is related to meaningful appellate review. In your view- That is how the Court's frequently placed the argument in connection to the defendant's substantial rights. How else should we frame that argument, then? Well, I do think that there is also an under- They talk about it in connection to the public reputation of the judicial system, which is that if the public can't understand a sentence, that's bad. If the sentence- So this goes to the fourth point of plain error. Correct. But Mr. Pasqua, the defendant also has a right to understand why he was sentenced. And that allows him, it gives him the right to meaningful appellate review. It allows him to determine whether he wants to have appellate review. And, frankly, it is, I think, a basic right to know what happened. It is basically what happened here is the Court, is what we're being asked to accept, is the Court said, this guy did some really bad things, therefore, he should go to jail for 67 months. That's not an explanation. That's sort of the opposite of the rule of law. I mean, you're optimistic that anybody would look at this and be bewildered by why he got the sentence. But, you know, Mr. Klein cited Ortiz, where we said, you know, the district court described the conduct and imposed a sentence. And anybody could infer, you know, why the sentence was pretty harsh because the conduct was pretty horrifying. So if we have a case where the district court goes through the conduct, it involves obstruction of breathing and a stomach wall. He's on supervised release and witness tampering and all of that. And the district court picks sentences for the violations that are below what he would have been within guidelines, at least notwithstanding what you're going to address in the letter briefing. You know, wouldn't a reasonable observer say, oh, I understand why he did that. In fact, you know, he could have gone higher than that and I would understand it. It's not a case where we'd say, gee, I really don't get how he arrived at that number. The difference, Your Honor, is that in Ortiz, the district court actually said what it was doing. The district court emphasized the horror of what was done to her, Ortiz's criminal history, the likelihood that he just does what he wants to do, he's likely to recidivate, and his lack of credibility because he believed that he lied to the court. You may have already answered this question. Yes, Your Honor. Forgive me, Ms. Johnson, but do you agree that on plain error and in the context of a review of a sentence, we can consider, for example, the statements that the district court made during the Beretta hearing or any other previous? No, I don't agree with that, Your Honor, because the statute is very clear that the statement of reasons must be made in open court at sentencing. You shouldn't expect people to have to go back through the record to figure out what the judge is talking about. Well, that's right. I mean, we might say that there is an error, right, if you don't specifically say it at sentencing, but we say that the other aspects of plain error review are not satisfied if we can look at the record and determine the reasons, right? No, I don't. We don't, in fact, remand when we can tell from the record whether or not it means like we do think it would have been better for the district court to have said it at the sentencing as opposed to another time. I have not seen any case, Your Honor, and I apologize if I have missed something, where the justification for upholding the sentence was that somewhere else in different proceedings the court said something that explained the sentence. Sometimes if what the court does is say I accept probation's recommendation and their reasoning, that can do it, particularly in the context of a violation of supervised release. But that didn't even happen here. Isn't there a lot of these cases where we say if we could tell from the record the reasons, we're only referring to the record of the sentencing hearing in isolation from the case, from the rest of the case? Well, I think that in those cases the record does not mean the full record of the case. It means the or it doesn't mean the record evidence. It means the court's statements on the record, because, again, the requirement is a statement of reasons. The judge could have had a very good reason for the sentence and he could have very But a lot of times, you know, this district judge sat through the whole trial and heard all the evidence. So at the sentencing when he says, I think that this offense was really bad and here's the sentence I'm giving you, it should be understood in light of the fact that he knew all the details about it and didn't need to repeat it, right? That's contrary to Second Circuit precedent, Your Honor. Corley I think is probably the most relevant case. Corsi, I apologize, that 723F3366 where the judge, in fact, does sit through the entire trial and then at sentencing actually does refer to a sentencing consideration in that he says the reason for my sentence is deterrence, which actually is a sentencing factor. He says I want to deter this defendant and the population in general, and it's reversed because that is not enough of an explanation to justify the sentence that was given. How does deterrence affect it? How did it lead to the judge choosing the particular level for each individual defendant? Thank you, Your Honor. A letter by Friday, yes? If that's possible. Certainly, Your Honor. Thank you. Although I see from the great confidence exhibited here that it will be done on Friday. So I appreciate it. We'll reserve the decision. I take it we've given some help.